United States District Court
Southern District of Texas
**ENTERED**
April 20, 2016
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| Plaintiff/Respondent, | § | |
| | § | |
| V. | § | CR. No. C-13-130-26 |
| | § | (CA. No. C-14-434) |
| DONNA SORISE, | § | |
| Defendant/Movant. | § | |

**MEMORANDUM OPINION AND ORDER DENYING MOTION TO VACATE, SET ASIDE OR CORRECT SENTENCE, DENYING CERTIFICATE  OF APPEALABILITY, DENYING MOTION TO REDUCE SENTENCE, AND VACATE TERM OF SUPERVISED RELEASE**

Donna Sorise (Sorise) filed a motion to vacate, set aside, or correct her sentence, pursuant to 28 U.S.C. § 2255. D.E. 1126.[1] Also before the Court are defense counsel's affidavit, the government's response and motion for summary judgment, Sorise's reply and notice of supplemental authority, as well as the record of the direct criminal proceedings. D.E. 1166, 1176, and 1189. For the reasons set forth herein, the Court denies Sorise's § 2255 motion and denies her a Certificate of Appealability.

Sorise's motion also included a motion to reduce her sentence and a request to vacate the term of supervised release. The Court denies both.

## I.  JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331.

---

[1]   Docket entry references (D.E.) are to the criminal case.

1

## II. BACKGROUND

In February 2013 Donna Sorise and her daughter Nancy Star Onega were indicted for money laundering in Count Seven of a multi-count and 32 defendant indictment. D.E. 26. The indictment charged multiple defendants with enterprise corruption and racketeering and in multiple counts with money laundering in the McConnell Unit of TDCJ in Beeville, Texas. Some of the defendants were employees of TDCJ. Some were facilitators who procured and transported drugs and cell phones as well as paid bribes to prison guards, and others were inmates in the prison who solicited TDCJ employees to bring controlled substances and cell phones into the McConnell unit at TDCJ. D.E. 27, pp. 2-3. The inmates used the facilitators to pay TDCJ employees and to transfer money as needed to facilitate drug transfers and other crimes inside and outside of the prison. The inmates used the cell phones to coordinate the enterprise, thereby making money to further the enterprises's affairs. *Id*., pp. 3-4.

Count Seven charged six defendants with conspiracy to commit money laundering including Onega and Sorise. *Id*., pp. 18-19, 21. In February 2013 Sorise and Onega were arrested in Florida. Counsel was appointed for each. D.E. 263, 264, 265.

On May 17, 2013, Sorise and Onega entered into plea agreements with the government and submitted to the Court an Agreed Statement of Facts signed by each defendant and her counsel. D.E. 517, 518, 524, 525. Each Statement of Facts recited various MoneyGram or Western Union transactions made by Onega and Sorise with co-defendants and others. During their joint rearraignment, the government read from each statement of facts. Sorise's Statement of Facts described that Sorise and Onega wire transferred the

2

proceeds of drug and cell phone sales to bribe guards and pay debts incurred by co-defendants Christopher Smith, Aaron Trevino, Preston Mascorro, and Karlos Bouchot among others. D.E. 524, p. 3. Sorise wired money to accounts held by co-defendant Karlos Bouchot outside of prison to cover Smith's drug purchases. Smith encouraged Sorise to invest in his drug deals to make money when the drugs were sold. Sorise's money transfers occurred between 2005 and 2009, including multiple wire transfers in 2009 to Jesse Perales, a guard at the McConnell Unit. *Id.*, pp. 4-5. Sorise admitted receiving two to three pounds of marijuana from Trevino or Bouchot in July 2010. *Id*. Sorise testified at rearraignment that she read her Statement of Facts, she knew the money was dirty and she believed the government could prove the facts outlined in her statement. *Id.*, p. 44.

After rearraignment, the Court ordered the Probation Department to prepare a Presentence Investigation Report (PSR). D.E. 530, 531. The PSR calculated Sorise's base offense level to be 20 based upon an estimated value of the funds laundered to be $200,000. D.E. 728 at ¶ 81. The Probation Department increased Sorise's base offense level by six because the proceeds laundered were from drug trafficking and by an additional four on the ground that Sorise was in the business of laundering funds, for a total offense level of 30. *Id.*, ¶¶ 82-88. After credit for acceptance of responsibility, Sorise's total offense level was 27. *Id*. at ¶¶ 88-91. She had no criminal history and her sentencing guideline range was 70 to 87 months, with a statutory maximum sentence of 20 years. *Id.*, ¶¶ 94, 108-109.

Defense counsel filed objections to Sorise's PSR contesting the amount of money laundered, and arguing the total amount of documented wire transfer by Sorise was $84,549.04. D.E. 742, ¶ 1. Defense counsel also argued that Sorise was not in the business of laundering money. *Id*., ¶ 2. The Probation Department responded to counsel's objections and revised the report (D.E. 768), but did not agree that her offense level should be adjusted. D.E. 770.

Before sentencing, co-defendant Trevino and another inmate provided affidavits in which they claimed that Sorise and her daughter were taken advantage of by their co-defendants who exaggerated the women's culpability. D.E. 890. In addition, friends filed letters of support. D.E. 989, 1086. Defense counsel filed a sentencing memorandum on Sorise's behalf. D.E. 905. Sentencing was held on October 29, 2013.

Defense counsel made his objections to Sorise's PSR. The Court recessed to allow defense counsel and the government to confer. D.E. 1159, pp. 32-34. During the recess, the parties agreed to reduce the amount of money laundered to less than $120,000 and Sorise waived her other objections. The agreement reduced Sorise's sentencing guideline range to 57 to 71 months. Defense counsel argued for leniency and home supervision, if not probation, on the following grounds:  1) Sorise is 57 years old; 2) she has a long employment history as a paralegal; 3) friends, employers and family support her and attest to her character, 4) she was used by her friend and co-defendant Smith, and 5) she had no previous criminal history.

4

The Court reviewed the compromise on the amount of laundered funds with Sorise who

agreed and agreed to waive her remaining objections to the PSR.[2]

---

[2]       23 THE COURT: Are there any corrections or objections?
24 MR. CARROLL: Yes, your Honor. We have resolved them
25 with the Government.
1 MR. PATTERSON: It's the same agreement, your Honor,
2 two levels down, due to the money range being less than 200,
3 more than 120. All the other adjustments are correct.
4 THE COURT: Is that correct, Mr. Carroll?
5 MR. CARROLL: Yes, your Honor. . . .
10 What's the United States' recommendation?
11 MR. PATTERSON: Same thing, your Honor, 71, and for
12 the same reasons that I stated before, same arguments, that
13 they were central to this conspiracy, that their conduct was
14 more than wide range and it's across the entire spectrum of
15 conspiracy, involved numerous racketeering activities.
16 Basically this entire scheme that these inmates were running
17 from prison would have -- somebody had to fill the role they
18 did or it would not have worked.
19 That's our argument. I'm asking for 71 months.
20 (Pause)
21 THE COURT: Ms. Sorise, you agree that the plus six
22 adjustment should be applied, that you knew that the laundered
23 funds were proceeds of drugs and were intended to promote an
24 offense involving the distribution of controlled substances?
25 THE DEFENDANT: Yes, your Honor.
1 THE COURT: You agree that you were in the business
2 of laundering funds?
3 THE DEFENDANT: Yes, your Honor.
4 THE COURT: Anybody force you or require you to
5 surrender your objections?
6 THE DEFENDANT: No.
7 THE COURT: You agree with your attorney that those
8 objections should be surrendered?
9 THE DEFENDANT: Yes.
10 THE COURT: You think his advice has been good?
11 THE DEFENDANT: Yes.
12 THE COURT: You're satisfied with his services?
13 THE DEFENDANT: Yes.

*Id.*, pp. 3-5.

The Court imposed a 71 month sentence of imprisonment. Sorise did not appeal, but timely filed the present motion.

### III.  MOVANT'S CLAIMS

Sorise argues in Ground One that the Court did not consider Trevino's or Rodriguez' affidavits at sentencing, that she and her daughter were minor participants in the conspiracy that Smith masterminded, yet he was sentenced to time served, but her sentence was 71 months. Additionally, Sorise claims she was induced to give up her legitimate objections to the PSR by her attorney's alleged concern that the judge was in a bad mood. D.E. 1126, pp. 5-9.

In Ground Two, Sorise complains that she was coerced into pleading guilty by the government's threat that her son would be indicted on drug trafficking charges. Sorise also argues that she was induced to plead guilty and to waive her right to appeal and file a § 2255 motion by explicit and implicit promises that she would get probation or near probation. *Id*., pp. 9-10.

Ground Three argues that the unreliable and uncorroborated testimony of Preston Mascorro and Christopher Smith caused Sorise's sentencing guideline range to be grossly inflated. She further challenges the offense level increase for "being in the business of money laundering." *Id*., pp. 8-9.

In Ground Four Sorise argues that her counsel was ineffective because he convinced her to give up legitimate objections to the guideline calculation, led her to believe that her efforts to cooperate would lead to a reduced sentence, and did not follow through with her

about an appeal or post-sentencing cooperation with the government. *Id.*, pp. 12-13.

Sorise's statement and attachment to her motion seeks a sentence reduction and also requests that the Court delete her term of supervised release. D.E. 1126, p. 20.

## IV.   ANALYSIS

### A.     28 U.S.C. § 2255

There are four cognizable grounds upon which a federal prisoner may move to vacate, set aside, or correct her sentence: 1) constitutional issues, 2) challenges to the district court's jurisdiction to impose the sentence, 3) challenges to the length of a sentence in excess of the statutory maximum, and 4) claims that the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255; *United States v. Placente*, 81 F.3d 555, 558 (5th Cir. 1996). "Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." *United States v. Vaughn*, 955 F.2d 367, 368 (5th Cir. 1992).

### B.     Involuntary Plea

Sorise argues that her guilty plea was involuntary. She claims it was coerced by explicit and implicit government threats that her son would be indicted. Additionally, she argues that she was induced to enter into her plea agreement, including waivers of her rights, with explicit and implicit promises that she would receive probation if "she agreed to everything and did not anger Judge Head." D.E. 1126.

In contrast to Sorise's claims, her counsel's affidavit states that during discovery he

7

learned that Sorise admitted to agents on two separate occasions in February 2013 that she participated in the delivery of 2 kilograms of methamphetamine ICE with the wife of co-defendant Mascorro. The AUSA informed counsel that if Sorise did not enter a guilty plea to Count Seven, the government planned to seek a superseding indictment to include the methamphetamine. The result of such a charge was a substantial increase in Sorise's sentencing exposure of 235 to 293 months imprisonment with a statutory minimum sentence of 120 months. D.E. 1166, pp. 5-6. In addition, agents had recently discovered additional money laundering transactions and believed more were likely to be discovered which also increased her sentencing exposure. *Id.* According to counsel, he met with Sorise for two hours on May 16, 2013, after previously meeting with agents and the handling AUSA and conveyed all of this information to Sorise, along with the AUSA's threat to seek an indictment against her son. *Id.*, pp. 6-7.

Onega's and Sorise's pretrial motions were set for hearing together the afternoon of Friday, May 17, 2013. At the time of the hearing, defense counsel for Onega announced to the Court that Onega was "ready for a plea." The Court asked Onega if she wanted to plead guilty and she replied, "Yes, your honor." D.E. 1158, pp. 3-4. Sorise answered the same way. *Id.*, p. 4. The Court explained to both Sorise and Onega that she was entitled to a jury trial and a jury trial would occur unless she chose to enter a guilty plea. The Court further advised them, "You should also understand that you should not enter a plea of guilty to any crime, any charge, that you did not commit." *Id.*, p. 8. The Court asked whether they had enough

time to consult with counsel. Both testified they had.[3] The Court advised each of them of their trial rights, but both maintained their wish to plead guilty. *Id*., pp. 12-13. The Court reminded Onega and Sorise that they were under oath.

The Court reviewed the elements of conspiracy to launder money. Both testified they understood. *Id*., pp. 14-16. The Court advised them of the maximum punishment of 20 years imprisonment, up to three years supervised release, a fine up to $250,000, and a $100 special assessment. *Id*., p. 16. Both defendants testified that they had discussed the sentencing guidelines and how the guidelines might be applied to them with their respective counsel.[4]

---

[3]
> 5 Have you had enough time to discuss your case with
> 6 your attorney and are you satisfied with your attorney's
> 7 services, Ms. Onega?
> 8 DEFENDANT ONEGA: Yes, your Honor.
> 9 THE COURT: And Ms. Sorise?
> 10 DEFENDANT SORISE: Yes, your Honor.
> 11 THE COURT: And is your -- has your attorney made
> 12 himself available to you for your consultations and
> 13 conferences, Ms. Sorise?
> 14 DEFENDANT SORISE: Yes, he does.
> 15 THE COURT: Ms. Onega?
> 16 DEFENDANT ONEGA: Yes, your Honor.
> 17 THE COURT: And did -- is your attorney following
> 18 your instructions, Ms. Onega?
> 19 DEFENDANT ONEGA: Yes, your Honor.
> 20 THE COURT: And Ms. Sorise?
> 21 DEFENDANT SORISE: Yes, your Honor.

*Id*., p. 10.

[4]
> 4 Have you and your attorney discussed how these
> 5 guidelines might be calculated and applied to you, Ms. Onega?
> 6 DEFENDANT ONEGA: Yes, your Honor.
> 7 THE COURT: Ms. Sorise?
> 8 DEFENDANT SORISE: Yes, your Honor.
> 9 THE COURT: Do you believe that you understand,
> 10 Ms. Onega?

Onega and Sorise both denied that they were threatened or forced to plead guilty or that they were promised leniency. *Id.*, p. 18. The Court then reviewed the plea agreements with Onega and Sorise. Each testified that she had reviewed the plea agreement with her attorney before signing the agreement. *Id.*, pp. 18-19. Both denied that they were promised a specific sentence. *Id.*, pp. 21-22.

For a prisoner to receive federal habeas relief on the basis of alleged promises that are inconsistent with representations made in open court when her guilty plea was accepted, a defendant must "prove (1) exactly what the terms of the alleged promise were; (2) exactly when, where, and by whom such a promise was made; and (3) the precise identity of an eyewitness to the promise." *Harmason v. Smith*, 888 F.2d 1527, 1529 (5th Cir. 1989) (citing *Davis v. Butler*, 825 F.2d 892, 894 (5th Cir. 1987)); *see also United States v. Perez*, 227 Fed. App'x. 357, 360 (5th Cir. May 4, 2007) (citing *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977)). To obtain an evidentiary hearing, a defendant must present the court with

---

11 DEFENDANT ONEGA: Yes, your Honor.
12 THE COURT: Ms. Sorise?
13 DEFENDANT SORISE: Yes.
14 THE COURT: You both told me that you worked as legal
15 assistants.
16 Was that a law firm engaged in civil practice or
17 criminal practice, Ms. Onega?
18 DEFENDANT ONEGA: Currently both.
25 THE COURT: How about you, Ms. Sorise?
1 DEFENDANT SORISE: Civil practice.
2 THE COURT: Okay. Did you know it was against the
3 law to do what you're accused of doing, Ms. Sorise?
4 DEFENDANT SORISE: Yes, your Honor

*Id.*, pp. 17-18.

"independent indicia of the likely merit of [her] contentions." *Harmason*, 888 F.2d at 1529. Such indicia may include an affidavit from a reliable third party. *United States v. Fuller*, 769 F.2d 1095, 1099 (5th Cir.1985). Sorise has not provided evidence to overcome her sworn statements during rearraignment, nor has she provided. any independent indicia of the validity of her allegations.

As to the government's alleged threats to indict her son, there was no mention of Sorise's one during the plea colloquy. The Court recognizes that a guilty plea made in consideration of leniency towards a third party may pose a danger of coercion that exceeds ordinary plea bargaining, but there is no absolute constitutional infirmity in promising leniency to that third party in exchange for a guilty plea. *See United States v. McElhaney*, 469 F.3d 382, 385 (5th Cir. 2006) (citing *United States v. Nuchols*, 606 F.2d 566, 569 (5th Cir. 1979)). A defendant who seeks to overcome her testimony in open court that her plea is voluntary bears a heavy burden, even in the face of threats to a third party. *Id*. The defendant must show that her plea was "so much the product of . . . misunderstanding, duress, or misrepresentation by others as to make the guilty plea a  constitutionally inadequate basis for imprisonment." *United States v. Diaz*, 733 F.2d 371, 373-74 (5th Cir. 1984) (quoting *Blackledge v. Allison*, 431 U.S. 63, 75 (1977)).

Sorise admitted that her son (Onega's brother) participated with her and Onega to accept drugs transported to Sorise and Onega by Mascorro's girlfriend, as set out in her PSR.

D.E. 728, ¶ 73.[5] Sorise's admission provides a factual basis for the government to charge her son with drug trafficking.

The Court found Sorise's plea of guilty to be voluntary at the time of her plea. After reviewing the motion, plea agreement and her testimony at rearraignment, the Court finds that her testimony and plea agreement contradict and outweigh Sorise's current claim that her plea of guilty was involuntary.

## C.    Waiver of § 2255 Rights

Sorise waived her right to collaterally challenge her sentence pursuant to the terms of her plea agreement. *See* D.E. 517, ¶ 7. In pertinent part, the waiver reads:

> Additionally the defendant is aware that Title 28, United States Code, § 2255, affords the right to contest or "collaterally attack" a conviction or sentence after the conviction or sentence has become final. The defendant knowingly and voluntarily waives the right to contest his/her conviction or sentence by means of any post-conviction proceeding.

---

[5]    Sorise stated that Mascorro sent his girlfriend on a public bus to Ocala, FL, once with narcotics strapped to her body, and hidden under her clothing. Sorise stated that she, Nancy Onega and Joseph Onega (Sorise's son) met her to a roadside hotel in Ocala, FL, and Sorise saw the bundles taped to her body as she removed them. Sorise stated that she and Nancy Onega and Joseph Onega were directed by either Mascorro or Bouchot to take custody of the narcotics from this female. Sorise stated that she knew there were narcotics in the bundles, but did not think that it was marihuana. . . . Sorise stated that she, Nancy Onega and Joseph Onega transported Mascorro's girlfriend to the nearest bus station after they took custody of the bundles, and she might have purchased the bus ticket for her to return to South Texas. Sorise stated that she might have been directed by Trevino to take custody of the bundles of narcotics, transport them to a rest area at the Florida/Georgia border, and transfer custody of the narcotics to a cousin of Trevino.

*Id*.

*Id*. Although Sorise argues that counsel was ineffective at the guilty plea stage, her claims of ineffective assistance do not automatically relieve her of her waiver of § 2255 post-conviction proceedings. *See United States v. White*, 307 F.3d 336, 343-44 (5th Cir. 2002) (an ineffective assistance claim survives a waiver "only when the claimed assistance directly affected the validity of that waiver or the plea itself").

In *White*, the Court decided there was "no need to except ineffective assistance of counsel claims from the general rule allowing defendants to waive their statutory rights so that they can reach a plea agreement if they wish. The Sixth Amendment right to effective assistance of counsel may also be waived, and thus need not be treated any differently." *Id*. at 343 (internal citations omitted). In other words, "a defendant can waive his right to appeal as part of a plea agreement if the waiver is informed and voluntary." *United States v. Wilkes*, 20 F.3d 651, 653  (5th Cir. 1994).

During rearraignment, this Court questioned Sorise regarding her waiver of the right to collaterally challenge her conviction or sentence,

> 2 At page -– paragraph seven, page 4-A, each of you are
> 3 giving up certain important rights. You've given up the right
> 4 to appeal your conviction and your sentence. You may not
> 5 appeal your conviction or your sentence unless you –- unless
> 6 you are sentenced above the statutory maximum of 20 years or
> 7 unless I depart upward from the guidelines when I have not been
> 8 requested to do so. Otherwise, you can't appeal your
> 9 conviction or your sentence.
> 10 You're also giving up your rights to file a petition
> 11 or request to the Court to look at the case again after it's
> 12 become final in hopes of asking the Court and asking the Court
> 13 to modify or vacate a sentence or conviction, but you're giving
> 14 up that right as well.

15 Did you know that you were giving up these rights,
16 Ms. Sorise?
17 DEFENDANT SORISE: Yes, your Honor. . . .
20 THE COURT: And do you want to give up these rights, . . .
23 THE COURT: Ms. Sorise?
24 DEFENDANT SORISE: Yes, your Honor.

D.E. 1156, pp. 20-21.

Sorise's sworn statements in open court are entitled to a strong presumption of truthfulness. *United States v. Lampaziane*, 251 F.3d 519, 524 (5th Cir. 2001) (citing *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)). Indeed, the Fifth Circuit affords "great weight to the defendant's statements at the plea colloquy." *United States v. Cothran*, 302 F.3d 279, 283-84 (5th Cir. 2002); *see also United States v. Maldonado-Rodriguez*, 64 F.3d 719, 733 (1st Cir. 1995) (giving credence to defendant's representations at plea hearing that he had not been pressured).

Sorise's testimony that she understood she was waiving her right both to appeal (except under certain circumstances) and to file any § 2255 motion is all that is required for her waiver to be enforceable. *See Wilkes*, 20 F.3d at 653. The Court finds that Sorise's plea agreement and her waiver of § 2255 rights contained therein are valid and enforceable. *Id*. Her remaining claims fall within the scope of her waiver and are barred from consideration, except for her claim that counsel failed to "follow up" with her regarding an appeal.

**D.    Ineffective Assistance of Counsel Regarding Appeal**

Generally, an ineffective assistance claim presented in a § 2255 motion is properly analyzed under the two-prong analysis set forth in *Strickland v. Washington*, 466 U.S. 668

14

(1984). *United States v. Willis*, 273 F.3d 592, 598 (5th Cir. 2001). To prevail on a claim of ineffective assistance of counsel, a movant must demonstrate that her counsel's performance was both deficient and prejudicial. *Id*. This means that a movant must show that counsel's performance was outside the broad range of what is considered reasonable assistance and that this deficient performance led to an unfair and unreliable conviction and sentence. *United States v. Dovalina*, 262 F.3d 472, 474-75 (5th Cir. 2001).

If the movant fails to prove one prong, it is not necessary to analyze the other. *Armstead v. Scott*, 37 F.3d 202, 210 (5th Cir. 1994) ("A court need not address both components of the inquiry if the defendant makes an insufficient showing on one"); *Carter v. Johnson*, 131 F.3d 452, 463 (5th Cir. 1997) ("Failure to prove either deficient performance or actual prejudice is fatal to an ineffective assistance claim.").

Sorise argues that her "trial counsel did not effectively follow through with her personally after sentencing regarding an appeal–despite any waivers, which Sorise would have argued were coerced . . . ." D.E. 1126, pp. 12-13. She claims she did not receive any notice of the 14 day period to appeal from counsel. *Id*., p. 20. Sorise further alleges, that threats to indict her son also deterred her from appealing. *Id*., p. 12.

If a defendant requests that counsel file a notice of appeal, counsel's failure to do so constitutes ineffective assistance even without a showing that the appeal would be meritorious. *See Roe v. Flores-Ortega*, 528 U.S. 470, 477, 486 (2000); *cf. United States v. Tapp*, 491 F.3d 263, 266 (5th Cir. 2007). But when a defendant has not instructed counsel whether to file a notice of appeal, the inquiry becomes whether counsel's failure to consult

with a defendant regarding an appeal constituted deficient performance. "Under what circumstances does counsel have an obligation to consult with the defendant about an appeal?" *Roe*, 528 U.S. at 478.

> In those cases where the defendant neither instructs counsel to file an appeal nor asks that an appeal not be taken, we believe the question whether counsel has performed deficiently by not filing a notice of appeal is best answered by first asking a separate, but antecedent, question: whether counsel in fact consulted with the defendant about an appeal. We employ the term "consult" to convey a specific meaning-advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes. . . .If counsel has not consulted with the defendant, the court must in turn ask a second, and subsidiary, question: whether counsel's failure to consult with the defendant itself constitutes deficient performance.

*Id*. The *Roe* court held that "counsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Id*. at 480. A defendant who complains that counsel failed to file an appeal must show that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." *Id*.

When a defendant has established that he/she demonstrated interest in an appeal, counsel's failure to consult constitutes deficient performance. *See United States v. Pham*, 722 F.3d 320 (5th Cir. 2013) (counsel ineffective for failing to consult with Pham regarding appeal when Pham was visibly upset after sentencing and told counsel he wanted to do something to get less time).

Counsel's affidavit states that he discussed Sorise's waiver with her before her guilty plea and met with her immediately after sentencing. During their post-sentencing meeting, they discussed possible post-sentencing cooperation. D.E. 1166, p. 11.

Sorise does not claim that she would have filed an appeal but for counsel's failure to consult with her regarding an appeal. Under these circumstances, she has not established prejudice. *See United States v. Bejarano*, 751 F.3d 280, 285-86 (5th Cir. 2014) ("The record does not support a finding that there is a 'reasonable probability' that Appellants would have timely appealed but for their counsels' deficient failure to consult, so we need not address the deficient performance prong."). *Id.* "Failure to satisfy either prong of an ineffective assistance claim defeats the claim." *Id.* at 286. Sorise's claim fails.

**E.      Motion to Reduce Sentence**

Sorise seeks early release from her sentence based upon her post-sentencing rehabilitation and requests that her term of supervised release be vacated. A "federal court generally 'may not modify a term of imprisonment once it has been imposed.'" *Dillon v. United States*, 560 U.S. 817, 819 (2010); *see also United States v. Stapleton*, 2009 WL 211088 at *2 (S.D. Tex. Jan. 28, 2009) (designated unpublished).[6] This Court may modify or correct a previously imposed sentence only in the "limited number of circumstances" set

---

[6]      Stapleton argues that he is entitled to consideration and a corresponding reduction in his sentence under § 5K2.0 of the Sentencing Guidelines based on post-sentencing achievements of an extraordinary character. . . .Stapleton's post-sentencing achievements (cited as a factor under U.S. S.G. § 5K2.0), while admirable and encouraged, may not be considered by the Court in reducing a sentence previously imposed.

*Id.*

17

out in 18 U.S.C. § 3582(c). *United States v. Bridges*, 116 F.3d 1110, 1112 (5th Cir. 1997). None of these circumstances are present.

Furthermore, this Court does not have the authority to reduce a sentence based upon post-sentencing rehabilitation alone. *See Pepper v. United States*, 562 U.S. 462, 490 (2011). It is only when there is a separate basis to set aside a sentence, such as a successful challenge on appeal or a successful motion to vacate pursuant to § 2255, that the resentencing court may consider post-sentencing rehabilitation in designing a sentence. *See id*.

As to Sorise's request to remove her supervised release, supervised release is controlled by statute and this Court does not have the authority to modify its imposition unless permitted by 18 U.S.C. § 3583. However, she may seek early release from her supervised release after she has served one year pursuant to 18 U.S.C. § 3583(e).

## V.   CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Although Sorise has not yet filed a notice of appeal, the § 2255 Rules instruct this Court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11, § 2255 Rules.

A COA "may issue. . . only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2). "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003).

To warrant a grant of the certificate as to claims denied on their merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). This standard requires a § 2255 movant to demonstrate that reasonable jurists could debate whether the motion should have been resolved differently, or that the issues presented deserved encouragement to proceed further. *United States v. Jones*, 287 F.3d 325, 329 (5th Cir. 2002) (relying upon *Slack*, 529 U.S. at 483-84).

As to claims that the district court rejects solely on procedural grounds, the movant must show both that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484 (emphasis added).

Based on the above standards, the Court concludes that Sorise is not entitled to a COA on any of her claims. That is, reasonable jurists could not debate the Court's resolution of her claims, nor do these issues deserve encouragement to proceed. *See Jones*, 287 F.3d at 329.

## VI.  CONCLUSION

For the foregoing reasons, Sorise's motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255 (D.E. 1126) is DENIED, she is also denied a Certificate of Appealability. Sorise's motion to reduce her sentence and to rescind her supervised release (D.E. 1126) is also DENIED.

Ordered this 19th day of April 2016.

HAYDEN HEAD
SENIOR U.S. DISTRICT JUDGE